## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DARIN RUF,**

> **Plaintiff,**

> > **Case Nos. 1:25-cv-424**

> **v.**

> > **JUDGE DOUGLAS R. COLE**

**THE CINCINNATI REDS,**

> **Defendant.**

## OPINION AND ORDER

Darin Ruf, a professional baseball player, sued the Cincinnati Reds, LLC (the entity that owns and operates the Cincinnati Reds), in state court on a negligence theory for injuries Ruf suffered during a baseball game at the Great American Ball Park, the Reds' home stadium. (Compl., Doc. 5). The Reds removed the case to this Court, asserting that Ruf's state-law tort claims are "inextricably intertwined" with the terms of two Major League Baseball collective-bargaining agreements, thus bringing the claims within the scope of the Labor Management Relations Act's preemptive effect. (Doc. 1, #4). Ruf now moves to remand the case back to state court. (Doc. 11). Moreover, asserting that the Reds lacked an objectively reasonable basis for removing this action to federal court, Ruf also requests attorneys' fees and costs. (*Id.* at #502; Doc. 14, #1191–92). As discussed below, the Court concludes that the Reds' effort at removal is a swing and a miss. Accordingly, the Court **GRANTS** Ruf's Motion to Remand (Doc. 11).

## BACKGROUND

Ruf, a former Milwaukee Brewer, filed this negligence action in the Hamilton County Court of Common Pleas nearly two years after he sustained an injury during a June 2, 2023, baseball game played at the Great American Ball Park, the Cincinnati Reds' home stadium. (Doc. 5, #29–30). The allegations are straightforward. According to Ruf, while playing first base in the bottom of the third inning, he ran to catch a foul ball. (*Id.* at #30). While chasing it, Ruf struck his knee on the sharp metal end of a tarp roller that was laying off to the side of the field. (*Id.*). An advertisement partly obscured the tarp roller's end, thus concealing the dangerous condition from Ruf's view. (*Id.*). His injuries led to "permanent and substantial" knee "deformities." (*Id.*).

Ruf responded by suing the Cincinnati Reds for damages. (*Id.* at #31–33). Specifically, he asserts (1) a common-law premises-liability claim, (2) a vicarious-liability claim based on the grounds crew's alleged negligence, and (3) a negligent hiring, training, supervision, and retention claim for employing unfit or unqualified persons in the grounds crew. (*Id.* at #31–32).

The Reds filed a Notice of Removal to this Court on June 23, 2025. (Doc. 1). There, the Reds cite 28 U.S.C. § 1331 as grounds for the Court's jurisdiction. (*Id.* at #2). The Notice explains that, although Ruf cast his allegations in the form of state-law negligence claims, they are preempted under § 301 of the Labor Management Relations Act (LMRA) because resolving Ruf's case will require a reviewing court to construe two collective-bargaining agreements (CBAs)—(1) an agreement between the Major League Baseball Clubs and the Major League Baseball Players' Association (the Basic Agreement), and (2) a collectively bargained Uniform Player's Contract

(UPC). (*Id.* at #2–4 (citing 29 U.S.C. § 185)). Thus, the Reds say, while Ruf *styled* his claims as sounding in common law negligence, they are in fact § 301 claims, making removal proper under the Court's federal question removal jurisdiction. (*Id.*).

Ruf now moves to remand the case back to the Hamilton County Court of Common Pleas. (Doc. 11). On Ruf's telling, his Complaint raises only state-law negligence claims, proof of which will not turn on the CBAs. (Doc. 5, #501–02; Reply, Doc. 14, #1185–91). The Reds, on the other hand, say that determining liability will require the Court to construe the (1) the CBAs' grievance provisions, (Cincinnati Reds Resp., Doc. 12, #511–13); (2) the Official Baseball Rules for Major League Baseball and a portion of the Major League Regulations, both of which are incorporated into the CBAs by reference, (*id.* at #513–17); (3) the CBAs' provisions regarding the "bipartisan Safety and Health Advisory Committee," which is tasked with maintaining a safe working environment for the players, (*id.* at #517–19); and (4) the CBAs' provisions governing such matters as Ruf's salary and the conditions under which players are entitled to compensation for work-related injury, (*id.* at #519–20).

Separately, Ruf contends that he is entitled attorneys' fees and expenses in the event of a remand, (Doc. 11, #502; Doc. 14, #1191–92), which the Reds dispute, (Doc. 12, #522).

The Reds have responded to Ruf's Motion, (Doc. 12), and Ruf has replied, (Doc. 14). So the matter is ripe for review.

## LEGAL STANDARD

A motion to remand challenges the Court's subject-matter jurisdiction over a dispute that has been removed from state court. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). A party may remove an action from state court if the federal court to which the action is removed would otherwise have had original jurisdiction. 28 U.S.C. § 1441(a). The defendant, as the removing party, bears the burden of proving that the federal court has jurisdiction in response to a motion for remand. *Eastman*, 438 F.3d at 549. The Court's determination of its jurisdiction over the removed action is limited to the legal bases the removing defendant asserted in its timely filed notice of removal. *Miller v. Adamo Grp.*, No. 1:22-cv-14, 2022 WL 1013090, at *3 (S.D. Ohio Apr. 5, 2022); 28 U.S.C. § 1446(a) (explaining that the removing party must file "a notice of removal … containing a short and plain statement of the grounds for removal"). In evaluating the asserted grounds for removal, a district court is not limited to the factual allegations in the complaint. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 n.11 (6th Cir. 2010). Rather, it enjoys wide discretion in the evidence it may review to assess its subject-matter jurisdiction. *Id.* But despite that latitude, "removal jurisdiction is assessed based on the facts as they existed at the time of removal." *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, 606 F. Supp. 3d 743, 747 (S.D. Ohio 2022).

## LAW AND ANALYSIS

**A.** **Section 301 of the LMRA Preempts Only State-Law Claims Implicating Collective-Bargaining Agreements.**

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Because "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules," *Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour*, 369 U.S. 95, 104 (1962), "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). But, to give the "policies that animate § 301 … their proper range …, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Id.* Thus, § 301's ambit may extend to what appear to be state-law tort claims. *Id.* at 211–12. That said, the LMRA's preemptive effect will not extend to a state-law tort claim if "the state-law claim can be resolved without interpreting the collective-bargaining agreement itself," because in that case, "the claim is 'independent' of the agreement for § 301 preemption purposes." *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Loc. 150, AFL-CIO*, 3 F.4th 866, 873 (6th Cir. 2021) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)) (cleaned up); *see also DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) ("[S]ection 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms.").

5

In the Sixth Circuit, courts apply a two-step framework to determine whether a given tort claim is "sufficiently intertwined with the meaning of a collective bargaining agreement to make it subject to federal preemption." *Adamo*, 3. F.4th at 873. First, the Court must "examine whether proof of the state law claim requires interpretation of the collective bargaining agreement terms." *DeCoe*, 32 F.3d at 216 (citation omitted). And second, the Court must "ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id*. If the plaintiff's claim neither requires contract interpretation nor arises from the substance of the collective-bargaining agreement, then the claim is "independent" of the agreement for § 301 purposes, and preemption does not apply. *Id*.

The Court can dispose of the "arises from" prong quickly enough. Ruf is alleging negligence, a theory of liability that arises under Ohio common law, not the CBAs. So preemption is not justified on that front.

That leaves *DeCoe*'s first prong—whether adjudicating Ruf's negligence claims would require a reviewing court to interpret a CBA's terms. To prevail on a negligence claim under Ohio law, a plaintiff must establish "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and the injury, and (4) damages." *Wheatley v. Marietta Coll.*, 48 N.E.3d 587, 605 (Ohio Ct. App. 2016) (quotation omitted). In analyzing whether proof of one or more of these elements will necessitate contract interpretation, the Court is mindful of two competing admonitions. First, the Supreme Court has instructed that courts must refrain from "elevat[ing] form over

substance." *Allis-Chalmers*, 471 U.S. at 211. That is, the Court must ensure that Ruf is not "evad[ing] preemption by failing to plead 'necessary federal questions.'" *Adamo*, 3 F.4th at 873 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). But at the same time, the Court must remain cognizant that, because removal implicates significant federalism concerns, *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)), "[a]ll doubts as to the propriety of removal are resolved in favor of remand," *Coyne ex rel. Ohio v. Am. Tobacco Corp.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted).

## B. Ruf's Claims Do Not Implicate the CBAs.

Recall that there are four grounds on which Ruf's claims allegedly implicate the CBAs: (1) the CBAs' grievance provisions, (Doc. 12, #511–13); (2) the Official Baseball Rules for Major League Baseball and a portion of the Major League Regulations, both of which the CBAs incorporate by reference, (*id.* at #513–17); (3) the CBAs' provisions regarding the "bipartisan Safety and Health Advisory Committee," an entity tasked with maintaining a safe working environment for the players, (*id.* at #517–19); and (4) the CBAs' provisions governing such matters as Ruf's salary (which is relevant to a damages computation) and the conditions under which players are entitled to compensation for work-related injury, (*id.* at #519–20). The Court considers each in turn.

**1. Adjudicating Ruf's Claims Will Not Require Application or Interpretation of the CBAs' Grievance Provisions.**

Start with the first asserted basis for preemption: the CBAs' grievance provisions. The Reds contend that the CBAs contain a "comprehensive 'Greivance Procedure' requiring the mandatory arbitration of claims to provide for 'an orderly and expeditious procedure for the handling and resolving of certain grievances and complaints.'" (*Id.* at #512 (quoting Doc. 12-1, #579)). The Reds point specifically to Article XI of the Basic Agreement, which defines "[g]rievance" to include all disputes involving "the existence or interpretation of, or compliance with, any agreement or any provision of any agreement, between the Association and the Clubs or any of them, or between a player and a Club." (Doc. 12-1, #580). Thus, because Ruf's claims allegedly implicate the CBAs on the grounds discussed below, *see* infra Part B.2–4, the Reds say that Ruf's claims are "necessarily preempted because they are covered by the Greivance Procedure." (Doc. 12, #512). As framed, this first argument necessarily turns on the merits of the remaining arguments. And because the Court ultimately rejects those arguments, *see* infra Part B.2–4, it rejects this one, too.[1]

---

[1] The Reds assert in the alternative that "even if Plaintiff were to argue that his claims are not … covered" by the CBAs, "the very fact that a court would be required to interpret the CBAs to resolve that key threshold dispute is itself a separate basis for preemption." (Doc. 12, #512). In other words, the Reds suggest that the Court's analysis in this Opinion is an independent ground for preemption. The argument is not well taken. If that were so, then courts could *never* decide preemption questions in cases such as this one without rendering that very task otiose.

**2. Adjudicating Ruf's Claims Will Not Require a Reviewing Court to Construe the Official Baseball Rules for Major League Baseball or the Major League Regulations.**

The Reds next contend that adjudicating Ruf's case will require a reviewing court to construe the Official Baseball Rules for Major League Baseball (the Rules), as well as a portion of the Major League Regulations (the Regulations), both of which the CBAs incorporate by reference. (Doc. 12, #513–17). Specifically, the Reds point to the duty and breach elements of Ruf's negligence claims as implicating the Rules and the Regulations. (*Id.* at #515). As to the former, Ruf alleges that the Reds had a "duty to maintain the premises so as to ensure that it was not in a state of disrepair and dangerous." (Doc. 5, #31). And as for the latter, Ruf alleges that the Reds "did not take reasonable precautions to keep its premises safe," thus breaching its duty to "maintain the premises." (*Id.*).

The Reds assert that these allegations "necessarily implicate" the CBAs because "[w]hat makes a professional baseball field 'safe' and 'maintained,' including how a tarp is positioned and stored, clearly depends on the rules, regulations, and customs of the sport." (Doc. 12, #515). "Likewise," the Reds explain, "the reasonableness of [Ruf's] actions during the incident can only be analyzed through the prism of the sport, implicating the same rules, regulations, and customs." (*Id.*). In support, the Reds cite the Commentary to Rule 5.09, which notes that players may attempt to make a catch in foul territory, including situations where making the catch will require "jump[ing] on top of a railing, or canvas that may be in foul ground," which the player does "at his own risk." (Doc. 12-3, #1032). The team also cites various provisions of the Regulations that reference on-field tarps, (*see* Doc. 12-4, #1175), as

9

well as portions of the Regulations that prohibit teams from bringing "chairs, stools, benches, or any equipment, bags, or coolers onto the field of play during the progress of the game," (*id.* at #1173), but do not similarly prohibit the presence of tarps. The Reds contend that "[i]nterpreting these rules and regulations, in the context of industry practice and the larger framework created by the CBAs, is necessary to define not only the scope of any duty Defendant owed Plaintiff and whether there was any breach of that duty, but also Plaintiff's assumption of the risk and contributory fault." (Doc. 12, #516).

The argument does not persuade. Section 301 of the LMRA "preempts only state law claims that are substantially dependent on an analysis of a collective-bargaining agreement, not claims that only tangentially involve CBA provisions." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990) (cleaned up); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation does not require the claim to be extinguished."). But the Reds never explain how Ruf's negligence claim is "substantially dependent" on the provisions it cites. The portion of the Rules the team cites describes activity that Ruf is not alleged to have engaged in—namely, "jump[ing] on top of a railing, or canvas that may be in foul ground." (Doc. 12-3, #1032). So nothing in Ruf's negligence claim demands interpretation of that language. And although the Reds are correct that there are portions of the Regulations that discuss on-field tarps, (*see* Doc. 12-4, #1175 ("A catch may be made on the field tarpaulin"; "A ball lodging behind or under canvas for a field tarpaulin is

out of play"; "A ball striking the field tarpaulin and rebounding onto the playing field is in play.")), none of these provisions bear on the allegations at issue here. Ruf "does not dispute that the tarp was permitted to be on the field." (Doc. 14, #1189). Rather, his claim is based on "the way it was stored." (*Id.*). And nothing in the provisions that the Reds cite bear in any way on that question.

The Reds' reference to the "context of industry practice and the larger framework created by the CBAs" suggests that the Reds believe the Rules and the Regulations are probative of the MLB's practice and custom in some more general sense. (Doc. 12, #516). But insofar as the Reds are relying on these provisions because "they evince an industry practice, that requires, at most, a mere look" to the provisions, "which is insufficient for preemption." *Williamson v. China Basin Ballpark Co. LLC*, No. 20-cv-8056, 2021 WL 11669479, at *7 (N.D. Cal. July 28, 2021).[2]

The Court's conclusion is bolstered by considering some recent cases where the Sixth Circuit has determined that a plaintiff's tort claim stood in a relationship of

---

[2] The Reds suggest that *Williamson*, another tort case involving a professional baseball player (and hence largely the same CBAs that are at issue here), was wrongly decided because the *Williamson* court ignored that the Rules and the Regulations are "explicitly incorporated" into the CBAs. (Doc.12, #521). But this argument ignores that the *Williamson* court articulated two grounds for its conclusion that the MLB's Major League Rules were not implicated by the plaintiff's state-law tort claim. 2021 WL 11669479, at *7. The Reds are correct that one of them was the *Williamson* court's apparent view that the Rules were not part of the CBAs. *Id.* But separately, the court noted that, insofar as the Defendant sought to "rely on the fact that the Rules are incorporated into the CBA to demonstrate that they evince and industry practice," such use required "at most, a mere look" to the agreement, "which is insufficient for preemption." *Id.* That is, even *assuming* that the Rules were part and parcel of the agreement, the defendant's desire to use the Rules as evidence of industry custom or practice was insufficient to show that the court needed to *interpret* the Rules to dispose of the claim. *See id.*

11

"substantial dependence" to a CBA. *Fox*, 914 F.2d at 800. In *Adamo*, for example, the Court held that a plaintiff's state-law tortious-interference-with-contract and tortious-interference-with-business claims were dependent on the interpretation of a CBA because the alleged actions included, e.g., "failing to provide the qualified workforce as specified in the [CBA]." 3 F.4th at 874. In other words, an alleged contractual breach—failure to provide a qualified workforce—formed "the essence of the plaintiff's claim" *DeCoe*, 32 F.3d at 216 (citation omitted). So even though the plaintiff's tort theories did not derive from the substance of the CBA, resolving those claims would still require a reviewing court to interpret the terms of the CBA to "determine the scope of [the Defendant's] responsibilities concerning the workforce." *Adamo*, 3 F.4th at 874. In a more recent case, the Sixth Circuit held that state-law fraud claims were "completely preempted," in part because proving the claim would require the plaintiffs to prove that their grievances were "misprocessed" in a grievance-processing procedure that the CBA defined. *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 133 F.4th 678, 686–87 (6th Cir. 2025). Proving that allegation up required the plaintiffs to "point to and interpret the terms" of the agreement to "show at which steps in the process" the defendants "abdicated their duties." *Id.* at 687.

The common element between these two cases is apparent: in both, the meaning of the CBA went to the "essence" of the plaintiff's claim, *DeCoe*, 32 F.3d at 216 (citation omitted), and interpreting the CBA was largely inescapable. Not so here. Subject-matter overlap aside (the CBA is admittedly directed at the sport of baseball

12

in general), the provisions on which the Reds rely are entirely inapposite to Ruf's negligence theory. And because "not every dispute … tangentially involving a provision of a [CBA] is preempted by § 301," *Brittingham v. GMC*, 526 F.3d 272, 278 (6th Cir. 2008) (quoting *Allis-Chalmers*, 471 U.S. at 211), this argument for LMRA preemption fails. True, a court may need to explore various MLB practices and customs in defining the scope of any duty that the Reds owed. But the CBAs do not incorporate, and certainly do not define, those practices and customs. So interpreting the CBA will not inform the answer on that front.

3.    **Adjudicating Ruf's Claims Will Not Require a Reviewing Court to Construe the CBAs' Provisions Regarding the Safety and Health Advisory Committee.**

Next up to bat are the provisions of the CBA concerning the Safety and Health Advisory Committee, an entity that Article XIII of the Basic Agreement creates. The entity governs issues regarding player "[s]afety and [h]ealth." (Doc. 12-1, #594). The purpose of the Committee is (1) "to deal with emergency safety and health problems as they arise, and attempt to find solutions," and (2) "to engage in review of, planning for and maintenance of safe and healthful working conditions for Players." (*Id.*). The Reds say that "[t]he existence and operation of the Safety Committee is directly relevant to the analysis of Plaintiff's claims here" because the Committee "had the authority and responsibility to determine whether the storage of tarps on the field in foul territory … and the manner of that storage (including potential padding) gave rise to any potential player safety issues." (Doc. 12, #518). That "delegation of responsibility" is supposedly important because "it impacts the determination and

13

adjudication of whether and to what extent [the Reds] may have had a parallel duty regarding player safety issues, the nature of any such duty in light of the Safety Committee, and to what extent [the Reds] could have reasonably relied on guidance from and oversight by the Safety Committee." (*Id.*).

But the Reds do not explain *how* the Committee's existence affects any of these questions, nor does the team cite any authority for the proposition that the mere *existence* of the Committee somehow bears on these issues. And as Ruf points out, (Doc. 14, #1190), the Committee has only "advisory authority," not "the power to impose its views or recommendations on the parties." (Doc. 12-1, #595). That is, "the Safety Committee has no power to force the Reds to conform to any standard of care or to implement its regulations." (Doc. 14, #1190). So the Court cannot see how Ruf's negligence claim would require a reviewing court to construe the provisions the Reds cite. The Court's reasoning on this front is consistent with the conclusion that other courts have arrived at in similar contexts involving tort claims brought by professional athletes for in-game injuries. *See Stringer v. NFL*, 474 F. Supp. 2d 894, 914 (S.D. Ohio 2007) (holding that collectively bargained provisions establishing a "Joint Committee to address issues of player safety" did not preempt state-law tort claims because the "question is not whether Plaintiff's claim relates to subject matter contemplated in the CBA but whether resolution of the claim requires an interpretation of the terms of the CBA"); *Green v. Ariz. Cardinals Football Club LLC*, 21 F. Supp. 3d 1020, 1028 (E.D. Mo. 2014) (rejecting the argument that the existence of a "Joint Committee on Player Safety and Welfare" preempted former professional

14

athletes' negligence claims under the LMRA on the ground that a "[m]ere reference to part of a CBA is insufficient for preemption"); *Bush v. St. Louis Reg'l Convention*, No. 4:16-cv-250, 2016 WL 3125869, at*4–5 (E.D. Mo. June 3, 2016) (rejecting LMRA preemption argument where a collectively bargained "Joint Committee" on player health and safety did not "have the power to commit or bind any of the signatories to the CBA," or "establish a contractually agreed upon standard of care applicable to Plaintiff's claims").

Admittedly, one case, *Patrick v. NFL*, is something of an outlier on this issue. There, the Central District of California held that provisions regarding an "Accountability and Care Committee" and "Field Surface Safety and Performance Committee" preempted a professional athlete's state-law tort claims. No. cv 23-1069, 2023 WL 6162672, at *5–6 (C.D. Cal. Sep. 21, 2023). But that was because "each side offer[ed] a reasonable, competing interpretation of" the collective-bargaining agreement, and because those disparate interpretations bore on "the relevant standards and conduct that [were] pertinent to th[e] lawsuit." *Id.* Crucially, *Patrick* distinguished *Stringer*, *Green*, and *Bush*, on the ground that the provision at issue in *Patrick* imposed *mandatory* duties, whereas the provisions at issue in the former set of cases did not. *Id.* ("In those cited cases, there is no mandatory duty imposed, whereas Article 39, section 11 of the CBA specifically states that the Field Surface *shall* review and revise the Field Surfaces Manual, and that every stadium in which an NFL game is to be played *must* be in compliance with the Committees' revised Mandatory Practices prior to the beginning of each NFL season." (cleaned up)). But,

15

as noted above, the relevant language here is non-mandatory, meaning that this case is closer to *Stringer*, *Green*, and *Bush*, than it is to *Patrick*.

In an effort to bring this case within *Patrick*'s reach, the Reds point to language that *requires* the Committee to make recommendations and use its best efforts to persuade the parties to the Basic Agreement to adopt those recommendations. (*See* Doc. 12, #521 (citing Doc. 12-1, #595 ("The Safety and Health Advisory Committee shall make recommendations to the Parties as to the solution of problems and the establishment of policies. The Committee shall use its best efforts to persuade the parties to adopt the Committee's recommendations."))). True, that language is in some sense "mandatory," at least insofar as it mandates what *the Committee* will do. But that just illustrates the problem. In *Patrick*, the CBA required that *the stadium* comply with the Committee's recommendations. That is, the CBA imposed an obligation *on the signatories* to ensure that the facilities met those requirements. By contrast, in *Bush* (and cases like it) the Committee did "not have the power to commit or bind any of the signatories to the CBA." 2016 WL 3125869, at *4. Just so here— the Committee has only "advisory authority" and lacks "the power to impose its views or recommendations upon the Parties." (Doc. 12-1, #595). Because the Committee lacks the power to bind signatories to the CBAs, and because the provisions regarding the Committee do not "establish a contractually agreed upon standard of care," a reviewing court will not need to interpret these provisions to resolve Ruf's negligence claim. *Bush*, 2016 WL 3125869, at *4.

16

Perhaps sensing that its first Article XIII argument is wanting, the Reds take another swing. The team points to provisions in Article XIII of the Basic Agreement that allow the Players Association to "file and pursue through arbitration a grievance concerning safety and health," (Doc. 12, #518 (quoting Doc. 12-1, #595)), and another provision that requires the Commissioner's Office to "investigate and to attempt to resolve" issues identified in safety complaints made to the Commissioner's Officer. (Doc. 12-1, #595; *see* Doc. 12, #518). But the arbitration process to which the Reds refer is non-mandatory. (*See* Doc. 12-1, #595 ("The Players Association *may* file and pursue through arbitration a grievance concerning safety and health." (emphasis added)). And there is no allegation that the Players Association has opted to pursue this path. So again, the Reds fail to explain *how* Ruf's negligence claim will necessitate interpretation of this provision. Likewise, there is no allegation that a safety complaint was filed with the Commissioner's Office. So the connection between Ruf's case and the provision regarding the Commissioner's Office duty to investigate safety complaints is mysterious at best.

### 4. Adjudicating Ruf's Claims Will Not Require a Reviewing Court to Construe the CBAs' Provisions Regarding Ruf's Salary and the Conditions Under Which He Is Entitled to Compensation for Work-Related Injury.

Finally, the Reds contend that assessing Ruf's damages will require a reviewing court to construe the CBAs. (Doc. 12, #519–20). The Reds' main argument on this front focuses on Regulation 2 of the UPC, which provides in pertinent part that

17

> Disability directly resulting from injury sustained in the course and within the scope of his employment under this contract shall not impair the right of the Player to receive his full salary for the period of such disability or for the season in which the injury was sustained (whichever period is shorter), together with the reasonable medical and hospital expenses incurred by reason of the injury and during the term of this contract or for a period of up to two years from the date of initial treatment for such injury, whichever period is longer.

(Doc. 12-2, #975 (quoting Doc. 12-1, #957)). But courts have roundly rejected the argument that this language and language like it preempts state-law tort claims on facts like these. For example, in *Williamson v. China Basin Ballpark Co. LLC*— another tort case involving a professional baseball player's severe in-game injury— the Northern District of California rejected the argument that Regulation 2 had any preemptive effect. 2021 WL 11669479, at *6. That was because "Regulation 2 relates to compensation a player is entitled to receive from his employer," i.e., the team for which he was playing. *Id.* Williamson, however, was suing "the owner and operator of the property on which Williamson suffered injury," not his own baseball team. *Id.* Likewise, the court in *Bush* rejected a preemption argument based on similar provisions of an NFL CBA because "those provisions speak to the player's ability to perform under his contract, or otherwise recover from, his own NFL team," rather than the player's ability to recover from the team on whose property the player was injured. 2016 WL 3125869, at *4.

The result is no different here. Regulation 2 appears in an agreement to which Ruf and the Milwaukee Brewers are parties. (Doc. 12-2, #969, 975). But Ruf is suing the Cincinnati Reds, not the Milwaukee Brewers. (*See generally* Doc. 5). So just like in *Williamson*, and much like in *Bush*, Regulation 2 does not control, and a reviewing

18

court will not need to interpret it to resolve Ruf's negligence claim. *See Williamson*, 2021 WL 11669479, at *6; *Bush*, 2016 WL 3125869, at *4.

Apart from Regulation 2, the Reds also gesture at various other provisions in the CBAs related to "salary," the "minimum compensation rate for all Major League players," and Ruf's "compensation during the year he was injured, all of which will play an integral part of any damages calculation in this case." (Doc. 12, #519–20 (first citing Doc. 12-1, #550–55; and then citing Doc. 12-2, #973)). But the team makes no effort to identify the *specific* language in these pages that supposedly calls for interpretation. Nor could it. Ultimately, "evidence of future damages will be determined factually by a jury based on the testimony of expert witnesses who will opine on [Ruf's] future potential lost earnings." (Doc. 14, #1191). And while an expert witness might reference the CBAs in forming an opinion on that topic, that does not show that a "judicial interpretation of the CBAs' terms would be required." (*Id.*).

Indeed, on the Reds' view, almost any personal injury claim by a professional athlete would be subject to LMRA preemption. Imagine, for example, that an athlete were injured in an automobile accident during normal, everyday driving, and sued the other driver. Determining the quantum of damages would require reference to the same CBA provisions to which the Reds point here. It simply cannot be the case that the LMRA would preempt all such claims.

**C.     The Court Awards Ruf Attorneys' Fees and Costs.**

That leaves one final piece of housekeeping: Ruf's request for the attorneys' fees and costs he incurred in connection with bringing this motion. (*See* Doc. 11, #502; Doc. 14, #1191–92).

Under the removal statute, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The statute confers "considerable discretion in awarding attorney's fees." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013) (citation omitted). But "[d]iscretion is not whim," and so the Supreme Court has instructed that "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 141 (2005). "A defendant lacks an objectively reasonable basis for removal when well-settled case law makes it clear that federal courts lack jurisdiction to hear the case." *A Forever Recovery, Inc. v. Twp. Of Pennfield*, 606 F. App'x 279, 281 (6th Cir. 2015) (citations omitted). That said, a party seeking fees and costs need not show "that the unsuccessful party's position" was so weak as to be "frivolous, unreasonable, or without foundation." *Martin*, 546 U.S. at 133 (citations omitted). At bottom, the test aims to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress's basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Powers*, 758 F.3d at 515 (quoting *Martin*, 546 U.S. at 140).

20

The Court holds that this standard warrants an award of attorneys' fees and costs in this case. The Sixth Circuit reached this same conclusion in *Powers*, a case where the defendant removed a state case to federal court on LMRA preemption grounds. There, the defendant removed the case to federal court after becoming aware of a collective-bargaining agreement after the case had been state court for some four years. *Powers*, 728 F.3d at 513. As here, the defendant's theory of preemption was that resolution of the plaintiff's claims would "require interpretation of the CBA, and any state law claim substantially dependent upon analysis of a CBA is preempted by § 301 of the LMRA." *Id.* (cleaned up).

Consider first the Reds' argument that resolving Ruf's claims would require a reviewing court to construe either the Rules or the Regulations, which are incorporated into the CBAs by reference. (*See* Doc. 12, #513–17). As discussed, the Reds' position is that a reviewing court will need to interpret the Rules and the Regulations because the propriety of maintaining on-field tarps, and the reasonableness of Ruf's actions, needs to be interpreted "through the prism of the sport," which implicates the "rules, regulations, and customs" contained in the Rules and the Regulations (*Id.* at #515). The argument bears a strong resemblance to one that the Sixth Circuit rejected as lacking an objectively reasonable basis in *Powers*. There, the defendant contended that it had an objectively reasonable basis to remove to federal court because Tennessee law required the court to assess a product liability claim by considering "the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar

products." *Powers*, 728 F.3d at 518 (citation omitted). And that, the defendants said, necessitated an interpretation of a CBA because the agreement "set forth customary designs and standards for rigs, because Article 6 of the CBA requires that the employer provide rigs not less than the minimum standards." *Id.* (cleaned up). In other words, much like the Reds argue here, the *Powers* defendant asserted that the reviewing court needed to interpret the CBA because the CBA contained some evidence of a broader industry custom or practice.

The Sixth Circuit rejected the argument, pointing out that "the general evaluation of industry standards does not require reference to the CBA; it can be provided by expert testimony, documents, manuals, or other sources. A dispute is completely preempted only if resolution *requires* interpretation of a CBA." *Id.* (cleaned up). Likewise, to the extent that adjudicating Ruf's claim will require a court to consider the "rules, regulations, and customs" of baseball, (Doc. 12, #515), other sources can supply that information. So, as the Court has already held, Ruf's claim will not require a reviewing court to interpret the CBAs. And Sixth Circuit precedent should have made it clear to the Reds that it lacked an objectively reasonable basis for an argument to the contrary.

The result on the Reds' Safety and Health Advisory Committee argument is no different. As explained, federal courts have roundly rejected the argument that the mere existence of a professional athletic association's advisory safety committee requires a reviewing a court to construe a CBA where the case is premised on a state-law tort theory of liability. *See Stringer*, 474 F. Supp. 2d at 914; *Green*, 21 F. Supp.

3d at 1028; *Bush*, 2016 WL 3125869, at*4–5. And the sole case that appears to go the other way on this issue, *Patrick v. NFL*, expressly distinguishes *Stringer*, *Green*, and *Bush*, on the ground that those cases involved situations where the collective-bargaining agreement imposed no "mandatory duty" to follow the committee's suggestions. 2023 WL 6162672, at *6. And while the Reds try to make this case resemble *Patrick* by pointing out that the Committee has "mandatory authority to make recommendations and persuade stakeholders regarding potential safety measures," (Doc. 12, #581), that argument ignores that the real question is whether the Committee has the "power to commit or bind any of the signatories to the CBA," or whether the provisions represent a "contractually agreed upon standard of care." *Bush*, 2016 WL 3125869, at *4. Because the plain text of the CBAs does neither of those things, (*see* Doc. 12-1, #595 ("The Committee, however, shall only have advisory authority and it shall not have the power to impose its views or recommendations upon the Parties.")), the Reds lacked an objectively reasonable basis for this argument.

The Reds' argument that calculating Ruf's damages will require interpretation of the CBAs' provisions regarding compensation lacks an objectively reasonable basis for the same reasons. Again, federal courts have rejected the argument that Regulation 2, *Williamson*, 2021 WL 11669479, at *6, or provisions like it, *Bush*, 2016 WL 3125869, at *4, preempt state-law tort claims where the plaintiff is suing an entity that is not a party to the CBA. And other than Regulation 2, the Reds identify

no specific language from the CBAs in need of interpretation. So again, the Reds lacked an objectively reasonable basis for this argument.

Finally, because the Reds' argument based on the CBAs' grievance procedures falls with its other three arguments, the Reds did not have an objectively reasonable basis for that argument either.

## CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's Motion to Remand (Doc. 11) and **ORDERS** the Clerk to **REMAND** this case to the Hamilton County Court of Common Pleas. Further, because the Reds lacked an objectively reasonable basis for removing this case to federal court, the team must cover Ruf's reasonable attorneys' fees and costs. But before the Court can order an appropriate award on that front, it needs some evidence of Ruf's reasonable expense. To that end, the Court **ORDERS** Ruf to submit additional briefing documenting his reasonable expenditures within fourteen (14) days.[3]

**SO ORDERED.**

January 23, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[3] Upon remand, the Court may retain jurisdiction over a matter for the limited purpose of awarding attorneys' fees and costs. *See Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997) ("[A] district court, after issuing an order of remand, may make an award of attorney fees and costs in a separate order.").